UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) Case 1-07-cr-85 |
| vs. | ) |
| | ) MATTICE/CARTER |
| | ) |
| CORDELL STAMPER | ) |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Cordell Stamper's Motion to Suppress (Doc.10) is before the undersigned Magistrate Judge having been referred by the District Court for a report and recommendation pursuant to 28 U.S.C.§ 636(b)(1)(B)&(C). The defendant seeks suppression of a firearm and his statements regarding ownership of the firearm on the ground that the firearm was found pursuant to an illegal seizure and the statements, which were made immediately following discovery of the firearm, are fruit of the poisonous tree. For the reasons stated herein, it is RECOMMENDED that the defendant's motion to suppress be DENIED.

II. Relevant Facts

An evidentiary hearing was held before the undersigned Magistrate Judge on Monday, November 26, 2007. Officer Scott Crider was the only witness to testify. Officer Crider is employed by the Chattanooga Police Department where he has been assigned primarily to patrol. For the past six years, he has patrolled the East Chattanooga area and has become very familiar with the neighborhood. It is a high crime, violent area with significant gang and drug activity.

1

On April 12, 2007, at approximately 12:00 pm, Officer Crider was on routine patrol traveling northbound on North Orchard Knob Boulevard when he observed the defendant on a bicycle traveling southbound. Officer Crider was on the lookout for a specific vehicle, and, at first, there was nothing in particular about the defendant that interested him. However, Officer Crider noticed that the defendant began to watch him and jammed his right hand into his right pants pocket forcefully. The defendant then crossed into the center lane of oncoming traffic, wobbling significantly. A car heading toward the defendant in the opposite lane had to slow and swerve to keep from hitting him. Officer Crider continued northbound around a curve and turned around at the next cross street. At this point, Officer Crider activated the dash camera and his audio equipment. They continued to operate throughout Officer Crider's entire encounter with the defendant until Officer Crider took the defendant to the Hamilton County Jail.

Officer Crider was now traveling in the southbound lane of North Orchard Knob Boulevard, and he could see the defendant on his bicycle approaching him from the opposite direction heading northbound on the sidewalk. Both defendant's hands were on the handlebars but his right hand was balled up and resting on the bike's handlebar as if the defendant had something in it. The video shows the defendant riding the bicycle on the sidewalk approaching Officer Crider's car from the opposite direction. Just before the defendant reaches Officer Crider's patrol car, the defendant reaches across his body with his right hand. Officer Crider testified that he believes the defendant is discarding a firearm at this time. Officer Crider also stated that he did not notice this movement on April 12, 2007. The first time he noticed it was when he reviewed the video tape.

Officer Crider further testified that as the defendant rode up next to Officer Crider's patrol car, Officer Crider motioned with his hand for the defendant to come over. The defendant, still on his bicycle, came to the passenger's side of the patrol car where the window was down. At this point, the video shows only the view of the street from the front windshield of the patrol car. However, the audio recorded the conversation between Officer Crider and the defendant. Officer Crider asked the defendant where he was going. At first he said he was going to his "grandmamma's house;" a few moments later he said he was going to see his "PO" (probation officer). Officer Crider told defendant he had been stopped because he turned around and pulled in front of someone. Officer Crider asked him if he had anything on him, if he had "any warrants," why was he on probation and where was his probation officer. Officer Crider also asked for identification.

Officer Crider testified that as the defendant reached for his identification, a piece of paper fell out of his pocket and into the passenger's side of the patrol car. The defendant gave his identification to Officer Crider and then placed both hands, which were empty, on the open window of the patrol car. Officer Crider could not reach the paper in the passenger's side and so he exited his patrol car to retrieve the paper to give to the defendant. As he exited, Officer Crider saw the defendant reach into his right pocket again with his right hand. As Officer Crider rounded the back of his patrol car, he lost sight of the defendant. When Officer Crider reached the passenger side of the patrol car where the defendant was standing, having dismounted the bicycle, Officer Crider could see that there was nothing in either of defendant's hands, and he suspected the defendant had discarded some illegal contraband. Officer Crider called dispatch and asked dispatch to check for outstanding warrants on the defendant. While he was waiting for

3

dispatch to complete the check, Officer Crider asked the defendant if he had in his pockets any contraband, anything sharp, or anything that might stick Officer Crider. The defendant said "no." He asked the defendant if he could check his pockets. The defendant said he could. Officer Crider checked the defendant's pockets to ensure that the defendant had no weapon. After doing so, he looked around on the ground to see if the defendant had discarded anything. He saw a firearm lying five to six feet away in the grass next to the concrete sidewalk. According to the digital clock on the videotape, four minutes and eight seconds elapsed from the time Officer Crider pulled the defendant over until Officer Crider saw the gun. Officer Crider handcuffed the defendant, placed him under arrest, and retrieved the gun. After giving the defendant his Miranda rights, Officer Crider asked a series of questions concerning the ownership of the gun. At first the defendant denied he owned the gun, but later he admitted the gun was his and that he had obtained it after someone had shot at him recently.

Officer Crider testified that when he saw the defendant drive into oncoming traffic, he knew the defendant had violated traffic laws. Officer Crider also testified that he has cited and arrested people for traffic violations while riding a bicycle. For example, he has taken people to jail for DUI while riding a bicycle. Officer Crider did not and has not written the defendant a ticket for the traffic violation. Officer Crider did not see anything about the defendant to specifically identify him as a gang member or see anything on him relating to drugs or drug paraphernalia.

### III. Analysis

The defendant argues that Officer Crider had no constitutional basis for detaining him, and, therefore, evidence of the firearm and statements made by the defendant subsequent to the

discovery of the firearm should be suppressed. There are at least two bases upon which the defendant's motion to suppress should be denied. First, the defendant abandoned the firearm before Officer Crider found it. Second, Officer Crider found the gun after the defendant was reasonably detained for a traffic violation, and defendant's statements regarding ownership of the gun were made voluntarily after receiving his Miranda rights during a lawful detention.

*Abandonment*

Officer Crider originally thought at the time of the stop on April 12, 2007, that the plaintiff had discarded his firearm while Officer Crider was walking around the back of his patrol car in order to reach the passenger side of the vehicle to pick up the paper the defendant had dropped. However, upon reviewing the video-tape, Officer Crider could see the defendant, before he stops to talk to Officer Crider, reach or throw his right arm across his body in a manner which suggests that he was discarding something. Officer Crider concluded that the defendant was, at that time, discarding his weapon. I agree. I conclude the defendant discarded his weapon in the grass next to the public sidewalk before he stopped his bicycle to talk to Officer Crider.

It is well settled when a person abandons property, he no longer possesses a reasonable expectation of privacy in that property. *Hester v. United States*, 265 U.S. 57, 58 (1924); *accord United States v. Robinson,* 390 F.3d 853, 873-74 (6th Cir.2004). Absent a legitimate expectation of privacy in the place or thing to be searched, the Fourth Amendment provides no protection against unreasonable searches and seizures of that place or thing. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Gooch*, 499 F.3d 596, 601 (6th Cir. 2007). In this regard, it has routinely been held that where a defendant discards an item in a public place to avoid arrest

immediately before a police encounter, the defendant is said to have abandoned that property for purposes of determining whether he has a legitimate expectation of privacy in the item. *See California v. Hodari,* 499 U.S. 621, 629 (1991); *United States v. Dillard*, 2003 WL 22400724 *4-5 (6th Cir. Oct. 20, 2003) (and cases cited therein), *cert. denied*, 541 U.S. 975 (2004). In *United States v. Cruthers,* 458 F.3d 459, 463 n. 1 (6th Cir. 2006), the defendant was deemed to have abandoned his firearm for Fourth Amendment purposes when he discarded it in an alley while being pursued by police. In the instant case, the defendant discarded his firearm on the ground next to a public sidewalk before he stopped to talk to Officer Crider. Consequentially, he abandoned any legitimate expectation of privacy in the firearm before it was retrieved by Officer Crider, and Officer Crider's seizure of the firearm did not violate any of the defendant's rights under the Fourth Amendment. This analysis still leaves unanswered the question of the admissibility of defendant's statements which I shall address next.

*Valid Traffic Stop*

"A seizure, within the meaning of the fourth amendment, occurs only when a reasonable person, in view of the circumstances surrounding the encounter with law enforcement officials, believes he is not free to leave." *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), *cert denied,* 498 U.S. 1039 (6th Cir. 1991));; *see also United States v. Orsolini*, 300 F.3d 724, 730 (6th Cir. 2002) (same). The government argues the defendant was not detained, rather his encounter with Officer Crider was a consensual encounter much like the types of encounters police may have with someone in an airport who agrees to stop walking in the terminal and speak with police after being asked to do so. *See United States v. Frazier*, 936 F.2d 262, 264 (6th Cir. 1991) (No seizure occurred where

6

officers approached defendant walking toward gate, defendant agreed to speak to officers, and defendant allowed officer to see ticket and identification.); *Winfrey*, 915 F.2d at 216 ("The request for, and examination of, an airline ticket and driver's license do not amount to a seizure under the fourth amendment.")

In the instant case, however, Officer Crider did not ask the defendant if he would talk to him; rather, Officer Crider motioned with his hand for defendant to come to him. In effect, Officer Crider gave the defendant a visual order to stop his bicycle and come to Officer Crider's vehicle. Further, when the defendant complied with Officer Crider's directive, Officer Crider did not then ask defendant if he would talk to him. Instead, Officer Crider immediately began questioning him. I conclude that a reasonable person would not have felt free to leave under such circumstances and that Officer Crider did detain the defendant on April 12, 2007 within the meaning of the Fourth Amendment. I also find that this detention constituted a traffic stop, the only anomaly being that this traffic stop involved a non-motorized vehicle rather than a motorized vehicle.

"A traffic stop is analogous to a "Terry stop" in that, following the initial stop, the subsequent detention cannot be excessively intrusive and must be reasonably related in time to the investigation." *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999); s*ee also*, *United States v. Wilson*, __F.3d__, 2007 WL 3131682, *3 (6th Cir. October 29, 2007) ("An ordinary traffic stop is like an investigative detention, the scope of which is governed by *Terry* [*v. Ohio,*

<em>7</em>

392 U.S. 1 (1968)] principles") (brackets added) (quoting *United States v. Perez,* 440 F.3d 363, 370 (6th Cir.2006)).[1]

Once the purpose of the traffic stop is completed, the officer may not continue to detain the vehicle or its occupants unless, during the stop, further information arises to support reasonable suspicion sufficient to justify continued detention. *United States v. Perez,* 440 F.3d 363, 370 (6th Cir. 2006) (citing *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995)). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Perez,* 440 F.3d at 372 (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)). "The investigative means used should be the least intrusive means reasonably available to verify or dispel the officer's suspicions in a short period of time." *Perez,* 440 F.3d at 372 (citing *Royer*, 460 U.S. at 500).

In Tennessee, absent some exceptions which do not apply here, traffic laws are applicable to persons riding bicycles. Tenn. Code. Ann. § 55-8-172.[2] When Officer Crider saw the

---

[1] It is well established that police may make an investigatory stop based on reasonable suspicion to believe a crime has been or is being committed. *Terry v. Ohio*, 392 U.S. 1 (1968). Further, it is well settled that police may make an investigatory stop based on probable cause to believe a civil traffic violation has been or is being committed. *Whren v. United States*, 517 U.S. 806, 813-14 (1996). However, the question of whether police may make an investigatory stop based on reasonable suspicion to believe a civil traffic violation has been or is being committed is not fully resolved in the Sixth Circuit. *See Gaddis ex rel. Gaddis v. Redford Tp*., 364 F.3d 763, 771 n. 6 (6th Cir. 2004). Nevertheless, I need not address this issue since the traffic stop in the instant case was made based on probable cause to believe a civil traffic violation had been committed.

[2] Tenn. Code. Ann. § 55-8-172 provides:

(a) Every person riding a bicycle upon a roadway is granted all of the rights and is subject to all of the duties applicable to the driver of a vehicle by this chapter and chapter 10, parts 1-5 of this title, except as to special regulations in §§ 55-8-171 -- 55-8-177, and except as to those

defendant riding his bicycle on the street into oncoming traffic requiring a car to slow and swerve in order to avoid the defendant, Officer Crider had probable cause to believe that the defendant had violated Tenn. Code. Ann. § 55-8-115 (requiring vehicle to stay on the right side of the road) and Tenn. Code. Ann. § 55-8- 175 (requiring bicyclists upon a roadway to ride as close as practicable to the right hand curb of the roadway.)  Thus, the initial detention of the defendant was justified under the Fourth Amendment.  Nevertheless, the defendant's counsel implied at the suppression hearing that Officer Crider used the traffic violation as a pretext to stop the defendant and investigate his inchoate suspicions that the defendant was involved in drug or gang activity.  However, the subjective intent of the officer is irrelevant. "[S]o long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment."  *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc); *accord Gaddis ex rel. Gaddis v. Redford Tp*., 364 F.3d 763, 771 n. 6 (6th Cir. 2004).

Once it is determined that the initial stop was justified, the undersigned must consider whether the length of detention and the means of investigation were reasonable.  Officer Crider asked the defendant to identify himself and asked him questions concerning where he was going and why.  Asking for identification and asking questions about one's purpose for traveling are a reasonable component of a traffic stop.  *United States v. Ellis*, 497 F.3d 606, 613-14 (6th Cir. 2007); *United States v. Hill*, 195 F.3d 258, 268 (6th Cir. 1999) (*see also* cases cited therein). In

---

provisions of this chapter and chapter 10, parts 1-5 of this title which by their nature can have no application.
(b) A violation of this section is a Class C misdemeanor.

addition, Officer Crider asked dispatch to check on any outstanding warrants for the defendant, also a reasonable component of a traffic stop. *United States v. Wellman*, 185 F.3d 651, 656 (6th Cir. 1999); *Martinez*, 356 F. Supp.2d at 863. Officer Crider also asked the defendant if he had "anything on him," which the undersigned interpreted to mean Officer Crider was asking if he had any type of contraband on him. While a traffic stop is ongoing, an officer may lawfully question a driver about contraband and ask for consent to search. *Meuhler v. Mena*, 544 U.S. 93, 101 (2005) (holding that as long as police questioning does not prolong the original, lawful investigatory detention, such questioning does not violate the detainee's Fourth Amendment rights.) *See also*, *United States v. Palomino*, 100 F.3d 446, 449-50 (6th Cir. 1996) (police may lawfully ask for consent to search and whether the driver possesses contraband during course of traffic stop); *accord*, *United States v. Martinez*, 356 F. Supp.2d 856, 863 (M.D. Tenn 2005).

The entire detention before Officer Crider found the firearm lasted about four minutes. Officer Crider had not completed the purpose of the traffic stop when he obtained more information which justified continued detention. Before the traffic stop could conclude, *i.e.* before dispatch could return with an answer on the question of outstanding warrants and Officer Crider either gave or did not give the defendant a citation for a traffic violation, Officer Crider walked around the patrol car to retrieve defendant's piece of paper which had fallen in the passenger side of the patrol car. It appeared to Officer Crider that as he came around the patrol car, the defendant reached into his pocket and discarded something. This information, coupled with the fact that the defendant earlier appeared to be nervous about Officer Crider's presence and appeared to be hiding something in his hand, gave Officer Crider reasonable suspicion to believe the defendant had discarded contraband. Further detention was justified and that

10

detention lasted only a few moments before the firearm was discovered. Moreover, the firearm itself was found before the purpose of the traffic stop had concluded because dispatch had not returned with the warrant check. In sum, I conclude the length and manner of the detention was reasonable given the totality of the circumstances pursuant to Terry v. Ohio, 392 U.S. 1 (1968). In addition, because the detention was reasonable, discovery of the firearm was not made pursuant to an illegal detention and the statements made regarding the ownership of the firearm are not fruits of the poisonous tree. Thus, I will recommend the defendant's motion to suppress evidence of the firearm and the defendant's statements be DENIED.

### IV. Conclusion

Accordingly, for the reasons stated herein, it is RECOMMENDED the defendant's motion to suppress be DENIED.[3]

Dated: December 7, 2007          s/William B. Mitchell Carter
                                 UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).